IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

DINA ELIZABETH GUARDADO,
    Petitioner,

v.                                                Civil No. 3:22cv469 (DJN)

HAROLD CLARKE,
    Respondent.

**MEMORANDUM OPINION**

Dina Elizabeth Guardado, a Virginia state prisoner proceeding with counsel, brings this petition pursuant to 28 U.S.C. § 2254 challenging her convictions in the Circuit Court for the County of Spotsylvania, Virginia ("Circuit Court").[1] The Circuit Court convicted Guardado of arson, five counts of attempted murder, five counts of attempted malicious wounding, one count of possession of explosive materials and one count of statutory burglary with a deadly weapon. (ECF No. 12-1, at 1.) Guardado contends that she is entitled to relief upon the following grounds:

Claim One

    Guardado's Due Process rights were violated where the evidence was insufficient under *Jackson v. Virginia*, 443 U.S. 307 (1979) to support her convictions for committing arson, attempted murder, attempted malicious wounding, possession of explosive materials, and breaking and entering with a deadly weapon.

    (ECF No. 2, at 11–12.)

Claim Two

    Guardado asserts that she was denied the right to effective assistance

---

[1] The Court employs the pagination assigned to the parties' submissions by the CM/ECF docketing system. The Court corrects the spacing, capitalization, punctuation and spelling in the quotations from the parties' submissions.

of counsel, as guaranteed to her by the Sixth Amendment, and as defined by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 688 (1984), when:

> A. Trial counsel failed to move the court to dismiss the five attempted malicious wounding charges on double jeopardy grounds or, in the alternative, to dismiss the charges pursuant to the Commonwealth's promise to elect between the two sets of charges.
>
> B. Trial counsel violated his duty of loyalty and rendered ineffective assistance under *Cuyler v. Sullivan*, 446 U.S. 335 (1980), by neglecting to raise the best arguments in Guardado's defense on her behalf because they implicated her mother, and by objecting to evidence which tended to implicate Guardado's mother, in order to protect the interests of Guardado's mother over those of Ms. Guardado.
>
> C. Trial counsel violated his duty of loyalty under *Sullivan* by using his redirect examination of Guardado to attack, rather than to rehabilitate, her credibility, in order to protect his own interests over those of Guardado.

(*Id.* at 12.)

Respondent has moved to dismiss on the grounds that Guardado's claims lack merit. For the reasons set forth below the Motion to Dismiss (ECF No. 10) will be GRANTED.[2]

## I. APPLICABLE CONSTRAINTS UPON HABEAS REVIEW

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may

---

[2] Given that Respondent concedes that Guardado's claims are exhausted and not procedurally defaulted, the Court dispenses with separately reciting the history of Guardado's state criminal and collateral proceedings.

2

not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable — a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)). Given this standard, the decisions of the Virginia courts with respect to Guardado's claims figure prominently in this Court's opinion.

## II. SUFFICIENCY OF THE EVIDENCE

A federal habeas petition warrants relief on a challenge to the sufficiency of the evidence only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). The relevant question in conducting such a review is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)). The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Id.* at 318.

Guardado contends that the evidence was insufficient because "[t]here is an absence of direct evidence that Guardado was the individual who committed crimes involved with this

incident." (ECF No. 2, at 16.) The Court of Appeals of Virginia aptly summarized the overwhelming evidence of Guardado's guilt as follows:

> On March 29, 2017, Fire Marshall Shawn Divelbliss of the Spotsylvania County Department of Fire, Rescue and Emergency Management responded to a reported fire at the Arcand residence in Spotsylvania County. On the floor in the basement of the house, Divelbliss found three homemade bombs. Two of the bombs had been made from pressure cookers, and the third was made from a crock pot. One of the bombs had exploded. The devices had been filled with various items, including a fire starter log, two types of combustible black powder, and packets of tin foil containing nuts, screws, and bullets. The crock pot had been plugged in and all three devices had been covered by a towel. The towel had been set on fire, and the fire from the towel caused one of the devices to explode. Five members of the Arcand household were in the house when the fire started. The residents tried to extinguish the fire and eventually fled the house.
> Albrecht Arcand testified that he met appellant when they lived in the same apartment complex. Arcand and appellant went on two dates but were never physically intimate or in a relationship. After Arcand stopped seeing her, appellant began following Arcand as he walked to his job at Walmart each day. Arcand began to find alternate methods of getting to his job, and Walmart banned appellant from the store. After Arcand and his family moved from the apartment complex, they saw appellant in their backyard. Arcand contacted the police, but appellant's harassing behavior worsened. Appellant became hostile and left messages for Arcand and his siblings on Facebook and through phone calls. By October 2016, the stalking had escalated and Arcand and his family obtained a protective order against appellant. Appellant sued Arcand for an alleged injury. When Arcand and his family moved again to Spotsylvania County, appellant continued to contact them.
> After the fire at the Arcand residence, the police quickly developed appellant as a suspect and executed a search warrant for her car and residence. In appellant's car, the police found a receipt for aluminum foil and a crock pot from an Aldi store dated March 24, 2017. They also found a glove, a hammer, and an open bottle of [] flammable mineral spirits in appellant's car. In a purse inside appellant's closet, the police found an Aldi bag containing four empty black powder containers. In appellant's room, the police found recipe books and instruction manuals for the two pressure cookers and the crock pot used in the arson. The police confiscated appellant's phone and computer and sent them for forensic evaluation. That evaluation revealed that between October 2016 and March 2017, the computer had recorded approximately 150 searches pertaining to Improvised Explosive Devices (IEDs), arson, explosions, and how to make bombs using materials such as pressure cookers, aluminum foil, black powder, and other items. The laptop computer was accessed by only one account, listed to appellant, which was password protected. The black powder residue from the containers in appellant's closet was the same as the powder found in the devices in the Arcand residence. The police recovered a fingerprint on a plastic Aldi bag found at the crime scene that matched appellant's mother's fingerprints.

4

Investigators obtained security video from an Aldi store in Dumfries. The video shows a woman who resembles appellant purchasing a crock pot at the same time as is listed on the Aldi receipt found in appellant's car. The crock pot found at the Arcand residence matches the one purchased from Aldi.

Further, Fire Marshall Divelbliss investigated retail stores in the area that sold the brand of black powder that was found in appellant's closet. His research led him to a Gander Mountain store in the Woodbridge area. That store provided Divelbliss with security video that shows a woman who was identified as appellant entering the store with a large, empty bag. Appellant was seen on the video examining blasting powders and bullets and carrying items to an empty aisle. Further, Christian Warner, the store manager, testified that he had reviewed store surveillance footage and saw that appellant had "selected several bottles of black powder" from a shelf in the "black powder section." While the surveillance video did not clearly show appellant placing the powder into her bag, Warner noted that appellant's bag became "bigger" as she headed toward the check-out aisles. Appellant left the store without making any purchases.

John Zolldan, another Gander Mountain store employee, testified that appellant asked him about black powder. He described the interaction as unusual because appellant was "[v]ery focused on the black powder itself and then just kind of blank stares at anything that was being said to her." Zolldan had been trained "how to identify certain situations and different actions," and appellant's behavior and demeanor "threw off [his] alert bells for a little bit."

Special Agent Jane Gibbs of the Virginia Department of State Police testified as an expert in hazardous devices, explosives, explosives disposal, and fire investigation. She testified that the devices found in the Arcand home were designed to be explosive and to cause maiming, wounding, or death. Gibbs explained that the components of the devices could be transported safely on their own and required ignition by an external heat source, such as the burning towels found at the scene. She verified that the damage to the Arcands' house was consistent with incendiary devices.

Vasil Stoev testified that he married appellant a couple of days before her arrest. He stated appellant agreed to marry him in exchange for $15,000 so that he could gain citizenship. Stoev read from letters appellant had written to him while she was in jail in which she asked him to lie at trial and say that he was with her at her house on the night of the incident. Appellant's parents testified that they did not see appellant until 9:00 in the morning on March 29, 2017. Appellant's mother said that she had never been to the Arcand residence.

Appellant testified in her defense. She stated that she was at Stoev's residence on the night of the fire. She denied going to either Aldi or Gander Mountain, but when confronted with the evidence of the Aldi receipt, she said she could not remember the name of the store. She had no explanation for why the black powder canisters were in her room or how her mother's fingerprint could be on the Aldi bag at the crime scene.

(ECF No. 12-1, at 2–4 (all alterations, except first alteration, in original).)

The foregoing evidence is more than sufficient to demonstrate that Guardado is the person who committed the crimes at the Arcand residence. Accordingly, Claim One will be DISMISSED.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

#### A. Applicable Law

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient, and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, the Court does not need to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

Notably, Guardado filed a petition for a writ of habeas corpus with the Supreme Court of Virginia wherein she raised her present claims of ineffective assistance of counsel.

#### B. Alleged Double Jeopardy Violation

In Claim Two (A), Guardado asserts that she was denied the effective assistance of counsel because counsel failed to move to dismiss the indictments for attempted malicious wounding on double jeopardy grounds. Guardado asserts her convictions for attempted malicious wounding and for attempted murder are multiple punishments for the same offenses

6

under *Blockburger v. United States*, 284 U.S. 299 (1932). In rejecting that claim, the Supreme Court of Virginia stated:

> The Court holds this portion of claim (a) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This Court has previously rejected the argument that convictions for attempted murder and malicious wounding, based on a single, continuous criminal act, constituted multiple punishments for the same offenses under *Blockburger*. *See Coleman v. Commonwealth*, 261 Va. 196, 200 (2001). Accordingly, counsel could reasonably have determined a similar challenge to petitioner's convictions would have been futile. *See Correll v. Commonwealth*, 232 Va. 454, 470 (1989) (counsel not ineffective for failing to make a meritless objection). Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.
>
> In another portion of claim (a), petitioner contends she was denied the effective assistance of counsel when counsel failed to hold the Commonwealth to its promise not to seek convictions for both the attempted malicious wounding charges and the attempted murder charges. Petitioner asserts the Commonwealth charged her with five counts of attempted malicious wounding and five counts of attempted murder intending to proceed on either the attempted malicious wounding charges or the attempted murder charges, but not both. Further, petitioner asserts the Commonwealth informed the trial court that it had "promised" not to seek convictions on both sets of charges.
>
> The Court holds this portion of claim (a) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. The record, including the trial transcript, demonstrates that, when questioned by the court regarding whether petitioner could be convicted of both attempted malicious wounding and attempted murder, the prosecutor told the court he had advised defense counsel that he intended to "instruct the Court that my argument was going to be either or." After further discussion and argument, however, the prosecutor elected not to withdraw either set of charges. Thus, contrary to petitioner's allegation, the prosecutor did not admit to making any promise to petitioner. Further, petitioner does not allege the Commonwealth's initial plan to elect between the two sets of charges was part of a plea agreement petitioner entered with the Commonwealth, or to otherwise articulate any grounds upon which counsel could have argued the Commonwealth should be bound by that intent. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

(ECF No. 12-3, at 3–4.)

The Court discerns no unreasonable application of the law and no unreasonable determination of the facts in the Circuit Court's rejection of Claim Two (A). *See* 28 U.S.C. § 2254 (d) (1)–(2). The Fourth Circuit has admonished that "[w]hen, [as here], a claim of ineffective assistance of counsel raised in a habeas corpus petition involves an issue unique to state law . . . a federal court should be especially deferential to a state post-conviction court's interpretation of its own state's law." *Richardson v. Branker*, 668 F.3d 128, 141 (4th Cir. 2012). That is the case here with respect to Claim Two (A), regarding Guardado's double jeopardy claim. Accordingly, Claim Two (A) will be DISMISSED.

### C. Alleged Conflict of Interest

In Claim Two (B), Guardado contends here, as she did in the Supreme Court of Virginia, that:

> she was denied the effective assistance of counsel because counsel labored under a conflict of interest which caused him to neglect to raise arguments suggesting petitioner's mother was the real culprit. Petitioner further contends counsel's conflict of interest led him to object to the admission of evidence that would have implicated petitioner's mother. Specifically, petitioner contends counsel objected when, during cross-examination of petitioner's mother, the prosecutor began to ask how her fingerprint came to be in one of the explosive devices. Further, counsel failed to argue the individual in the surveillance recording from the Gander Mountain could have been petitioner's mother or to emphasize that petitioner's mother had access to petitioner's laptop.

(ECF No. 12-3, at 4.)

In rejecting that claim, the Supreme Court of Virginia stated this claim:

> satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. Petitioner has not explained the nature of the alleged conflict of interest or how counsel's actions resulted from that conflict. Thus, petitioner has failed to establish either an actual conflict of interest or an adverse effect on counsel's performance. *See Mickens v. Taylor*, 535 U.S. 162, 172 (2002). Further, petitioner fails to provide any support for her conclusory assertion that, had the prosecutor been permitted to question her mother about her fingerprint, the answer would have exculpated petitioner and implicated her mother. In addition, the record, including the trial transcript, demonstrates that the Gander Mountain employees who had interacted with petitioner at the store identified her as the

8

> person shown on the surveillance recordings. Given that positive identification and the trial court's ability to view the recording and petitioner, counsel could reasonably have determined any argument that the recording showed petitioner's mother would have been unsuccessful. Finally, as to petitioner's claim that counsel should have emphasized that her mother had access to her laptop, the record demonstrates that petitioner testified she kept her laptop in the living room with a post-it note with the user name and password. However, the laptop was found in petitioner's room. Further, petitioner's mother, testifying on petitioner's behalf, denied even knowing petitioner had a laptop. In addition, petitioner's mother required a translator to testify, yet the computer searches for information on making improvised explosive devices were conducted in English. Under the circumstances, counsel could reasonably have determined suggesting petitioner's mother was the true culprit based on her purported access to petitioner's laptop would have been futile. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

(ECF No. 12-3, at 4–5.)

The Supreme Court of Virginia's rejection of the claim was eminently reasonable. Guardado failed to demonstrate that counsel was laboring under an actual conflict of interest. To show the existence of an actual conflict of interest, Guardado must show that her interests diverged from her attorney's "with respect to a material factual or legal issue or to a course of action." *Stephens v. Branker*, 570 F.3d 198, 209 (4th Cir. 2009) (quoting *Gilbert v. Moore*, 134 F.3d 642, 652 (4th Cir. 1998)). Guardado showed no such divergence of interest. Therefore, she was required to demonstrate deficiency and prejudice under *Strickland*, which she did not do. Accordingly, Claim Two (B) will be DISMISSED.

Finally, in Claim Two (C), Guardado

> contends she was denied the effective assistance of counsel because counsel failed to rehabilitate petitioner during his redirect examination. Petitioner alleges that during cross-examination, the Commonwealth "pressed her aggressively on a number of statements and acts that were either definitively or allegedly attributed to her." On redirect, instead of attempting to rehabilitate petitioner, or simply deciding not to question petitioner further, counsel "actively attacked [her] credibility," by questioning her "grasp on reality." Petitioner suggests counsel's decision to do so likely stemmed from his purported desire to protect himself from a professional complaint based on his poor decision to call petitioner as a witness.

9

(ECF No. 12-3, at 5 (alteration in original).)

Initially, the Supreme Court of Virginia, concluded that Guardado failed to show that counsel was laboring under a conflict of interest. (*Id.*) The Supreme Court explained:

> "An actual conflict of interest exists where counsel has responsibilities to other clients or personal concerns that are actively in opposition to the best interests of the defendant." *Moore v. Hinkle*, 259 Va. 479, 489 (2000). However, "an attorney's desire to protect himself against a later charge of ineffective assistance of counsel, standing alone, does not constitute a per se conflict of interest." *Id.* Petitioner's speculative assertion that counsel must have been acting in his own self-interest at petitioner's expense is insufficient to show an actual conflict of interest.

(*Id.*)

The Supreme Court of Virginia further concluded this claim "satisfies neither the 'performance' nor the 'prejudice' prong of the two-part test enunciated in *Strickland*." (*Id.*) The Court explained:

> [T]he record, including the trial transcript, demonstrates that, during her trial testimony, petitioner insisted she had a relationship with Arcand, despite extensive evidence to the contrary, including a protective order and an order banning her from the Arcands' property. Petitioner claimed she could not recall having sent Parris Smith, who was dating one of Arcand's brothers, Facebook messages and claimed she rarely used Facebook, despite the Commonwealth having introduced nearly fifty such messages. She claimed she was with Vasil Stoev when the explosive devices were placed in the Arcand family's home, despite that Stoev had just testified to the contrary. Petitioner also denied exchanging text messages with Stoev, even after being shown the texts sent from her phone.
> On redirect, counsel asked petitioner about her inability to recall the messages, questioning whether she had any memory problems. Petitioner said she did not. Counsel asked if she had "ever been confronted with the idea that you have a problem with reality?" Petitioner said no. Counsel asked if petitioner understood what was going on and that she was on trial, and she said she did. Counsel asked if petitioner had been able to communicate with him about the evidence, and she said she had. Counsel then asked petitioner if it were her testimony that she had nothing to do with the explosive devices, and she said it was. While this questioning may have drawn further attention to petitioner's already apparent mental health struggles, it did not, as petitioner contends, constitute an open attack on her credibility. Further, counsel could reasonably have determined highlighting petitioner's difficulties would garner sympathy for her with the trial court. Finally, petitioner fails to proffer what questions counsel could have asked to rehabilitate petitioner or to proffer her expected answers. Thus, petitioner has failed to

10

demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

(*Id.* at 5–6.) The Court agrees with the determination of the Supreme Court of Virginia that Guardado failed to establish that counsel was laboring under a conflict of interest or otherwise was denied the effective assistance of counsel. Accordingly, Claim Two (C) will be DISMISSED.

### IV. CONCLUSION

For the foregoing reasons, Guardado's claims will be DISMISSED. The Motion to Dismiss (ECF No. 10) will be GRANTED. The action will be DISMISSED. A certificate of appealability will be DENIED.

An appropriate Final Order shall issue.

Let the Clerk file a copy of the Memorandum Opinion electronically and send a copy to counsel of record.

                                                           /s/
                                    David J. Novak
                                    United States District Judge

Richmond, Virginia
Dated: July 11, 2023